UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CASE NO.

| | |
|---|---|
| RICHARD A. LAVIGNE | ) |
|     Plaintiff | ) |
| | ) |
| V. | ) |
| | ) |
| LIFE INSURANCE COMPANY OF NORTH | ) |
|     AMERICA | ) |
| CITIZENS FINANCIAL GROUP, INC. | ) |
| CITZENS FINANCIAL GROUP LONG-TERM | ) |
|     DISABILITY PLAN | ) |
|     Defendant | ) |

# **COMPLAINT**

## **Introduction**

This is an ERISA claim to recover long-term-disability-benefits against a plan administered by Life Insurance Company of North America and the Citizens Financial Group Long-Term Disability Plan; to recover attorney's fees and costs allowed under the ERISA statute. This suit is an example of abuses where "the insurance industry found it could largely immunize itself from suit due to the Employee Retirement Income Security Act ("ERISA")." *United States v. Aegerion Pharmaceuticals, Inc.*, 280 F. Supp. 3d 217, 226 (D. Mass. 2017). Also, this is a claim to recover compensatory and punitive damages against Citizens Financial Group, Inc. for failing to pay short-term disability benefits under a plan administered by Life Insurance Company of America and funded by Citizens Financial Group, Inc. that is exempt from ERISA.

## Parties

1. Plaintiff is Richard A. LaVigne ("Mr. LaVigne"), an individual having a usual place of residence at Lakeville, Plymouth County, Massachusetts.

2. Defendant is Life Insurance Company of North America ("LINA") a stock insurance company having a usual place of business at 1601 Chestnut Street, Philadelphia, Pennsylvania. LINA is an insurance subsidiary of CIGNA Corporation of Bloomfield, Connecticut. LINA is authorized to engage in the business of insurance under the laws of the Commonwealth of Massachusetts as a licensed foreign insurer, and is doing business in the Commonwealth of Massachusetts.

3. Citizens Financial Group, Inc. ("Citizens") is a Delaware corporation having a principal place of business at Providence, Rhode Island.

4. Citizens Financial Group, Inc. Long-Term Disability Plan ("LTD Plan") is an employee welfare-benefit plan of which Citizens is an administrator having a principal place of business at Providence, Rhode Island.

## Jurisdiction and Venue

5. This Court has original jurisdiction for claims for benefits arising under 29 U.S.C. § 1132.

6. Venue is proper before this Court, because LINA is engaged in the business of insurance in this Commonwealth and Mr. LaVigne resides in this judicial district.

7. The group policy insurance policy that funds the LTD Plan issued in the state of Rhode Island and by its terms states that it is governed under Rhode Island law.

## Facts Common to All Counts

8. Citizens employed Mr. LaVigne for about 12 years before symptoms of fibromyalgia prevented him from doing the duties of his then occupation or any occupation.

9. Citizens provided to its employees' short-term disability ("STD-Plan") coverage through a plan administered by LINA.

10. The STD Plan is an ERISA exempt payroll practice plan under 29 C.F.R. § 2510.3-1(b) for which Citizens is liable.

11. Citizens provided to its employees long-term-disability-insurance benefits through the LTD Plan that is fully insured by LINA and identified by policy number FLK-980138.

12. Citizens paid the premium for coverage of 60% of Mr. LaVigne's compensation, and Mr. LaVigne paid a separate premium for more coverage under the LTD Plan

13. Mr. LaVigne is a beneficiary and participant under the LTD Plan that provided certain benefits to employees including Mr. LaVigne.

14. Mr. LaVigne is a participant in the LTD Plan, as defined by ERISA, 29 U.S.C. § 1002(7).

15. Citizens provided short-term disability coverage to Mr. LaVigne as part of his compensation for serving as an employee to Citizens.

16. On April 23, 2018 Mr. LaVigne left work on the advice of his treating physician after suffering from chronic pain caused by fibromyalgia made working impossible.

17. For years, Mr. LaVigne had treated with many physicians and physical therapists to treat the symptoms of fibromyalgia.

18. Mr. LaVigne applied for benefits under the Short-Term Plan.

19. The Short-Term Plan is funded 60% under Rhode Island's statutory Temporary Disability Insurance and 40% by LINA.

20. Under the STD-Plan administered by LINA and the LTD Plan:

    You are considered disabled during the first 26 weeks of your disability if you are not able to perform the material and substantial duties of your own job as a result of illness or injury. After 26 weeks of disability, you are considered disabled if you are not able to perform any of the material and substantial duties of your own occupation.

    After 26 months of long term disability, you are considered disabled when it is determined that ( due to the same sickness or injury), you are unable to perform the duties of any gainful occupation for which you are reasonably fitted by education, training or experience.

21. The State of Rhode Island paid benefits to Mr. LaVigne promptly.

22. LINA denied Mr. LaVigne's claim based on the same medical and occupational evidence with the State of Rhode Island paid benefits.

23. Mr. LaVigne appealed to LINA many times for coverage under the STD-Plan which LINA denied each time.

24. On May 7, 2019 Mr. LaVigne appealed to LINA and advised that more information would be forthcoming. Mr. LaVigne provided a copy of the Social Security Administration award determining that he was unable to engage in gainful employment.

25. On May 20, 2019 Mr. LaVigne underwent a functional capacity evaluation ("FCE") by an occupational therapist who determined that Mr. LaVigne could not engage in a sedentary occupation on either a full-time or part-time basis.

26. On June 28, 2019 Mr. LaVigne submitted these other materials in support of his appeal:

    1. Complete Social Security Administration file
    2. Functional Capacity Evaluation by Kerry Raymond, Occupational Therapist
    3. AMA Guide to Impairment 5th
    4. Updated Medical Information that LINA did not have before

     5. Occupational Description for Mr. LaVigne's occupation
     6. Affidavit of Cody LaVigne
     7. Affidavit of Elizabeth LaVigne
     8. Affidavit of Susan Kashgagian.
     9. Declaration of Richard LaVigne
     10 Information about CIGNA and Life Insurance Company of North America regarding claims practices including. This information is in the file in case this matter ends-up in litigation which we are trying to avoid.
         a. Summary Report from public disclosures in AZ showing the type of information that LINA tracks
         b. Response Form 1 – Conformance to Scope of Work and Methodology – AZ
         c. RSA with Massachusetts insurance regulators
         d. LINA claims unit description
         e. LINA claims procedures
         f. CIGNA Physician Instructions
         g. Depositions—Brian Billeter Rene Worst; Juan Mendez; Scott Allen; Noemi Landis; Troy Phipps; Richard Lodi; John Archaki
     11 Patient Assessment.

27. By letter dated June 28, 2019, Mr. LaVigne requested that LINA pay retroactive LTD Plan benefits and retroactive STD Plan benefits.

28. Mr. LaVigne continued to submit more supporting materials including medical information, depositions of LINA employees and public records from the State of Arizona describing LINA's claim practices.

29. LINA requested at DDT form from the Social Security Administration ("SSA") which Mr. LaVigne provided.

30. By letter dated August 16, 2019 Mr. LaVigne provided proof that he had requested the DDT form that LINA demanded and again he requested retroactive payment of STD Plan benefits and retroactive LTD Plan benefits.

31. By letter dated September 20, 2019 Mr. LaVigne provided the DDT form which showed his primary diagnosis by the SSA was for fibromyalgia, and again he requested retroactive payment of STD Plan benefits and retroactive LTD Plan benefits.

32. On November 1, 2019 LINA issued another adverse-benefit determination.

33. On November 11, 2019 LINA returned the depositions and public records from the State of Arizona and insisted that LINA could control the ERISA claim record.

34. Mr. LaVigne made multiple requests for the identity and report of the unnamed physician whom LINA had relied on to support its adverse-benefit determination dated November 11, 2019.

35. About December 9, 2019 LINA finally disclosed the report identifying the physician as Shadrach H. Jones IV who did not identify in what state he is licensed to practice medicine and is not licensed to practice medicine in the Commonwealth of Massachusetts.

36. Dr. Jones opined without examining Mr. LaVigne that all the treating physician's determinations were wrong, the FCE report was not valid based on *ipse dixit*, and wrote "All of the customer's conditions have been assessed to determine which conditions may independently or collective impact the customer's functionality (co-limiting). My medical analysis has determined that the following are co-limiting conditions, with respective associated limitations and restrictions: None."

37. On December 17, 2019 the occupational therapist who had conducted the FCE in May 2019 provided a supplemental report explaining the errors and misstatements in Dr. Jones' report.

38. LINA chose not to conduct a medical examination which the Sixth Circuit found to be an abuse of discretion when LINA relied on an opinion from Shadrach H. Jones, MD who opined, "the current objective or quantifiable clinical examination[s], clinical diagnostic testing, or imaging documentations do not support a significant ongoing physical

functional impairment which would preclude claimant from performing her own occupational duties." *Guest-Marcotte v. Life Insurance Company of North America*, 730 Fed.Appx. 292, 299 (6th Cir. 2018)

39. Under the 243 Code of Massachusetts Regulations 2.01

    **The Practice of Medicine** means the following conduct, the purpose or reasonably foreseeable effect of which is to encourage the reliance of another person upon an individual's knowledge or skill in the maintenance of human health by the prevention, alleviation, or cure of disease, and involving or reasonably thought to involve an assumption of responsibility for the other person's physical or mental well being: diagnosis, treatment, use of instruments or other devices, or the prescribing, administering, dispensing or distributing of drugs for the relief of diseases or adverse physical or mental conditions.
    (b) The Practice of Medicine includes the following:
    1. Telemedicine, as defined in 243 CMR 2.01: Telemedicine; and
    2. **Providing an independent medical examination or a disability evaluation**.

40. In a written determination dated January 11, 2019, the general counsel's office for the Massachusetts Board of Registration in Medicine determined that physicians offering a diagnosis or disability evaluation require Massachusetts licensure. A copy of the determination is attached as EXHIBIT A.

41. The opinion of Dr. Jones secured by LINA, involved the Practice of Medicine under Massachusetts law.

42. In conformity with the LTD Plan, Mr. LaVigne applied for benefits with the Social Security Administration ("SSA") under its disability insurance program.

43. The SSA determined that effective April 23, 2018 that he met the criteria for benefit eligibility.

44. For a person to be eligible for disability income benefits from the United States Social Security Act, a person must be unable to do any kind of substantial gainful work because of a physical or mental impairment (or a combination of impairments); (1) which has

lasted or is expected to last for a continuous period of at least 12 months, or (2) that is expected to result in death.

45. That definition of disability is more restrictive than the definition found in the applicable LTD Plan and STD-Plan.

46. Mr. LaVigne has been "totally disabled" under the LTD Plan and the STD-Plan and has been entitled under the LTD Plan to be paid benefits under both plans.

### LINA's Conflict of Interest

47. At all relevant times, LINA has been operating under a financial structural conflict of interest as LINA is liable for benefit payments due to Mr. LaVigne.

48. The financial conflict of interest influenced LINA's decision making.

49. This conflict of interest is exhibited by the history of biased claims administration by LINA and its related companies.

50. On June 20, 2006 the California Department of Insurance issued a report and market conduct examination finding that LINA has improperly denied long-term-disability claims. A copy of the reported is attached as EXHIBIT B.

51. On June 4, 2012 the California Department of Insurance issued a follow-up report about claims handling by LINA that detail how LINA continues to improperly deny long-term-disability claims. A copy of the reported is attached as EXHIBIT C.

52. On May 13, 2013, the Massachusetts Division of Insurance and other state insurance regulators signed a regulatory settlement agreement ("RSA") with LINA and other subsidiaries of CIGNA regarding its practices relating to handling long-term-disability claims. A copy of the RSA is attached as EXHIBIT D.

53. LINA paid at $250,000 fine to the Commonwealth of Massachusetts in connection with signing the RSA.

54. Upon information and belief, CIGNA Group Insurance is a d/b/a of CIGNA as it decides the claims of LINA.

55. Upon information and belief, CIGNA Group Insurance uses the same employees for LINA claims and appeals.

56. Because the claims and appeals of LINA are decided by CIGNA Group Insurance, the findings of the California Department of Insurance about LINA also apply to LINA.

57. The California Department of Insurance determined that LINA:

a. Failed to adopt and implement reasonable standards for the prompt investigation and processing of claims arising under its insurance policies;

b. Failed to effectuate prompt, fair and equitable settlement of claims in which liability had become reasonably clear;

c. Failed to represent correctly to claimants, pertinent facts or insurance policy provisions relating to a coverage at issue;

d. Attempted to settle claims by making a settlement offers that were unreasonably low; and

e. Failed to include a statement in its claim denial that, if the claimant believes the claim has been wrongfully denied or rejected, he or she may have the matter reviewed by the appropriate State insurance agency/department.

58. Underlying these findings were the facts that LINA:

a. Applied arbitrary deadlines for submission of proof of claim after the notice of claim had been denied. If the proof was not available or received within the designated period, then the claim was denied and pushed to the appeal process;

b.  Failed to request medical records prior to making a claim determination;

c.  Failed to perform any functional testing or peer review of medical records on file while utilizing functional test results as the guidepost for medical information necessary to the entitlement of benefits;

d.  Failed to consult with a health care professional with appropriate training and experience in the field of medicine involved in the medical judgment;

e.  Improperly used attending physician's statements to support its denial of disability while not clarifying with the attending physician why he/she was indicating continuing disability;

f.  Failed to perform a transferable skills analysis and labor market survey to identify alternate occupations appropriate to claimants under an "any occupation" policy;

g.  Ignored substantial information introduced after the claim denial;

h.  Failed to investigate the course and nature of a claimant's disabling condition as it related to the first date missed from work and the end of the waiting period;

i.  Assumed that alternate employers could accommodate for a claimant, but provided no documentation to support this assertion;

j.  Denied claims based on a "national economy" definition when it was supposed to evaluate a claimant's disability from his/her "own occupation";

k.  Failed to consider the course and nature of an illness before denying benefits;

l.  Ignored the medical assessments of its own medical health professionals, who determined that the claimants were disabled, and denied benefits;

m.  Removed several disabling health conditions from a claimant's history on file before requesting an internal health care professional to review claimant's file;

n.  Ignored correspondence received after the initial denial that reasonably required a response;

o.  Failed to clarify a claimant's restrictions and limitations with the attending physician who determined the claimant was disabled; and

p.  Failed to provide complete information in the file to the health care expert performing a peer review of the medical file.

59. Under the market conduct studies and agreements, it is alleged that LINA failed to

a.  obtain, consider or reconcile the complete Social Security Disability Income (SSDI) records relating to an award of SSDI benefits.

b.  obtain complete medical records.

c.  use the claimant's occupational duties as the occupational benchmark for an "own occupation" evaluation.

d.  perform Independent Medical Examinations.

e.  institute procedures to correct deficiencies relating to the definition of disability.

f.  use the proper medical specialist to review the medical records.

60. These deficiencies show that LINA has a history of biased claims administration.

61. The May 13, 2013 Massachusetts Division of Insurance RSA made similar findings to the California Division of Insurance.

62. LINA continues nationwide, for example, to ignore SSA findings of disability.

63. The most recent Circuit Court of Appeals decision discussing LINA's failure to reconcile SSA decisions and its own contrary determination is in *Raybourne v. Cigna Life Ins. Co. of New York,* 700 F.3d 1076 (7th Cir. 2012).

64. LINA did not reasonable explain why the SSA determination that Mr. LaVigne was disabled from all gainful employment did not demonstrated that he qualified for benefits under both the LTD Plan and STD-Plan.

65. LINA has failed to try to reduce potential bias and to promote the accuracy of its benefit determinations.

66. As the California Department of Insurance determined, LINA ignored the consistent discrepancy between its peer reviewers and Plaintiff's treating doctors regarding Plaintiff's condition; ignored the evidence submitted supporting Plaintiff's diagnoses; and ignored substantial evidence submitted after the initial denial from Plaintiff's treating physicians.

67. In doing so, LINA was probably looking at the financial burden of Plaintiff's claim, rather than provide a full and fair review of his claim, which allowed its conflict of interest to dictate its decision to deny to Plaintiff benefits.

68. Given that LINA pays benefits from its own assets and makes claims decisions, each time that LINA denies benefits it saves itself monies.

69. Using a medical doctors not licensed practice in the Commonwealth shows that LINA knowingly violated the ERISA claim regulations which is a breach of fiduciary duty.

70. The applicable regulation provides

    (iii) Provide that, in deciding an appeal of any adverse benefit determination that is based in whole or in part on a medical judgment, including determinations with regard to whether a particular treatment, drug, or other item is experimental, investigational, or not medically necessary or appropriate, the appropriate named fiduciary shall consult with a health care professional who has appropriate training and experience in the field of medicine involved in the medical judgment;

    § 2560.503–1 Claims procedure., 29 C.F.R. § 2560.503–1

71. Dr. Jones is not licensed to practice medicine in this Commonwealth

and relying on improperly licensed physicians demonstrates a failure to comply fiduciary duties.

## Count I

### Benefits Due From LINA Under ERISA, 29 U.S.C. § 1132(a)(1)(B)

72. Mr. LaVigne realleges the preceding paragraphs and incorporates the same by reference as if fully set forth herein again.

73. By letter dated January 13, 2020 LINA advised Mr. LaVigne that he had administratively exhausted his presuit remedies and that he could sue under ERISA.

74. This Court must conduct a plenary proceeding in evaluating LINA's and the LTD Plan's decision to deny benefits.

75. Under Rhode Island law, discretionary clauses in ERISA plans are unenforceable.

76. The decision to deny LTD benefits was not supported by substantial evidence was wrongful and not in compliance with laws.

77. Because of LINA's and the LTD Plan's refusal and failure to pay to Plaintiff disability benefits provided to him and to those participants totally disabled, plaintiff may have relief against LINA to recover benefits due to him under the LTD Plan, and to enforce his rights to benefits under the LTD Plan, and to clarify his rights to future benefits under the LTD Plan under 29 U.S.C. § 1132, and other employee benefits dependent on receipt of LTD Plan benefits.

78. If this Court orders retroactive reinstatement of benefits, this Court may enter appropriate relief under ERISA precluding LINA from using "off sets" against benefits payable to plaintiff, because of LINA materially breached the LTD Plan terms.

## Count II

### Benefits Due From Citizens Under The STD-Plan

79. Mr. LaVigne realleges the preceding paragraphs and incorporates the same by reference as if fully set forth herein again.

80. Citizens denied the claim based on the conduct of its agent LINA.

81. Citizens breach the duty of good faith and fair dealing implied in every contract.

82. Citizens owed a fiduciary duty to supervise the conduct of LINA.

83. Citizens breached its contractual obligations to pay benefits under the STD-Plan.

84. Citizens is liable for the breach perpetrated by LINA.

85. Citizens election to deny STD-Plan benefits, through the acts and omissions of LINA was done with malice, or ill will or involved a reckless or callous indifference to the protected rights of others.

86. As a result of the acts and omissions of Citizens acting through its agent LINA, Mr. LaVigne may recover damages for breach of contract, including compensatory damages, punitive damages, attorney's fees and costs and all other damages allowed as a matter of law.

## Count III

### Award of Attorneys' Fees and Costs

87. Plaintiff realleges the preceding paragraphs and incorporates the same by reference as if fully set forth herein again.

88. As LINA and the LTD Plan have unlawfully denied benefits, and has caused plaintiff to incur attorneys' fees and costs, and will cause him to incur additional fees and costs.,

plaintiff may recover under 29 U.S.C. § 1132 (g), costs, including reasonable attorneys' fees and interest at the Massachusetts statutory rate of 12% simple interest per annum on all back due benefits.

Plaintiff demands relief and judgment:

I. Against Citizens Financial Group, Inc. in an amount of damages to be determined by this Court, including compensatory and punitive damages plus prejudgment interest, post-judgment interest, costs and reasonable attorneys' fees allowed by statute or otherwise.

II. Against Life Insurance Company of North America and the Citizens Financial Group, Inc., Long-Term Disability Plan for equitable relief declaring the rights and duties of the Plaintiff and defendants for past benefits owed to the plaintiff, and future benefits to be paid to the plaintiff, and other employee benefits that are dependent on receipt of LTD Plan benefits.

III. For an order precluding the defendants from using "off sets" in determining retroactive benefits owed to the plaintiff, or in the future because defendant refused to recognize the decision of the United States Social Security Administration.

IV. In the alternative, an order of remand requiring defendant to afford Full and Fair Review under ERISA.

V. For such other legal or equitable relief as this Court deems just and proper.

RICHARD LAVIGNE
By his attorney,

*/s/ Jonathan M. Feigenbaum*
_____
Jonathan M. Feigenbaum, Esq.
B.B.O. #546686
184 High Street
Suite 503
Boston, MA 02110
Tel. No. : (617) 357-9700
jonathan@erisaattorneys.com